HONORABLE RICHARD A. JONES

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

RUDY ST. GERMAIN, et al.,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
THE INTERIOR, et al.,

        Defendants.

CASE NO. C13-945RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion for partial summary judgment and their motion for a protective order.  No one requested oral argument, and the court finds that oral argument is not necessary.  For the reasons stated below, the court GRANTS the motion for partial summary judgment (Dkt. # 37), although it does not reach several of Defendants' arguments.  It GRANTS the motion for protective order (Dkt. # 38), but does so without prejudice to the possibility that Plaintiffs are entitled to some discovery.  Part IV of this order contains instructions to the parties to submit a joint status report by June 18, 2015.

## II.  BACKGROUND

When Plaintiffs Rudy St. Germain and Michelle Roberts filed this lawsuit nearly two years ago, the Defendants (officials of the United States Department of the Interior) were in the midst of conducting an all-mail "Secretarial election" to determine whether the Nooksack Indian Tribe of Washington (the "Tribe") would adopt an amendment to

ORDER – 1

the Nooksack Constitution to delete a provision that granted membership in the Tribe to "persons who possess at least one-fourth (1/4) degree Indian blood and who can prove Nooksack ancestry to any degree." A Secretarial election is the federally-conducted election that Section 16 of the Indian Reorganization Act (25 U.S.C. § 476) mandates when a tribe wishes to enact a constitution or amend its constitution. Regulations implementing Section 16 require the Interior Secretary to convene an "election board" responsible for calling the election, registering voters, counting ballots, resolving voting disputes, and certifying results. 25 U.S.C. § 81.8(a). As the court will discuss in detail later, the Reorganization Act also requires the Secretary to review a proposed constitution or amendment to determine if it complies with applicable federal laws. 25 U.S.C. § 476(c), (d).

Plaintiffs believed that the amendment, if ratified, would help the Tribe "disenroll" them and about 300 other members of the Tribe, a faction that Plaintiffs call the "Nooksack 306." Plaintiffs filed their amended complaint on June 17, 2013, just four days before the completion of the Secretarial election. They listed five causes of action. They claimed that the Defendants violated the Indian Reorganization Act by either not determining whether the amendment complied with applicable laws or by wrongfully concluding that it did, that Defendants violated the Fifth And Fifteenth Amendments to the United States Constitution, that Defendants violated the Administrative Procedures Act ("APA") both by authorizing the election and in regulating voter registration and balloting, that Defendants breached the trust duties that the United States owes the Tribe and its members, and that Defendants violated the Freedom of Information Act ("FOIA") by failing to respond properly to requests for information that Plaintiffs submitted in March and May 2013.

On the same day they filed their amended complaint, Plaintiffs moved for a temporary restraining order to stop the election. They invoked only the Reorganization

ORDER – 2

1    Act and the APA in that motion.  The court questioned whether the Reorganization Act or

2    the APA permitted a *pre-election* challenge, noting that both statutes provided for post-

3    election remedies that would be just as effective.  Jun. 19, 2013 ord. (Dkt. # 25) at 7-8.

4    The court assumed the availability of pre-election relief, but concluded that Plaintiffs had

5    neither established that they were likely to succeed on their pre-election challenge nor

6    that equitable factors favored injunctive relief.

7           Although circumstances have changed since the court's last substantive order

8    nearly two years ago, this litigation has scarcely progressed.  The election concluded in

9    June 2013.  On June 24, 2013, the election board certified that the Tribe had adopted the

10   constitutional amendment at issue by a vote of 377 for and 239 against.  By August 2,

11   2013, Defendant Scott Akin, the Director of the northwest region of the Bureau of Indian

12   Affairs ("BIA"), had issued a memorandum (AR-A at 540-46)[1] overruling Plaintiffs'

13   post-election challenge to the amendment, thereby carrying out his statutory duty to

14   approve the results of the Secretarial election.  25 U.S.C. § 476(d) (requiring the

15   Secretary to approve the results of the election within 45 days).  Plaintiffs filed an

16   administrative appeal of that decision in August 2013, then voluntarily withdrew their

17   appeal in November 2013.  AR-B at 6, 40-41.  The parties asked the court in November

18   2013 to excuse them from the requirement to submit a joint status report, then followed

19   that request with Defendants' motion requesting that the court declare, in advance, what

20   standard of review applied to each of Plaintiffs' causes of action other than their FOIA

21   claim.  The court refused to rule on that motion, noting that it was not ripe and that

22   Defendants' insistence that they need not produce discovery beyond the administrative

23   record was impossible to resolve where they had not yet produced an administrative

24   record.  Jun. 18, 2014 ord. (Dkt. # 33).  Defendants produced an administrative record a

---

[1] Defendants filed an administrative record in July 2014.  It consists of two electronic files whose page numbering begins, respectively, at USA-A-000001 and USA-B-000001.  The court cites that record with the notation "AR-A" or "AR-B," deleting leading zeroes from the page numbering.

ORDER – 3

month later.  Not satisfied with that record, Plaintiffs served discovery requests in August and October 2014.

Defendants have now filed two more motions.  In one, they ask the court to dispose of Plaintiffs' constitutional claim, their breach-of-trust-claim, and their Reorganization Act claim.  That disposition would leave only Plaintiffs' FOIA and APA claims.  In Defendants' view, the court must resolve the APA claim based solely on the administrative record, and Plaintiffs are entitled to no discovery on that claim.  The parties apparently agree that discovery is not necessary, at least at this stage, on Plaintiffs' FOIA claim.  For these reasons, Defendants also moved for a protective order that would relieve them of the obligation to respond to Plaintiffs' discovery requests. Those requests include a set of interrogatories and requests for production of documents ("RFPs") as well as a set of requests for admission ("RFAs").  The interrogatories and RFPs are concerned solely with Defendants' Reorganization-Act-mandated review of the proposed amendment.  The RFAs inquire about Defendants' reliance on a set of BIA guidelines for Secretarial elections, which BIA office conducted review of the amendment in question, and Defendants' understanding of the impact of the amendment on the rolls of the Tribe.

The court's ruling, which it explains in the next section, is as follows:

1) The court dismisses Plaintiffs' claim invoking the Fifth and Fifteenth Amendments as well as its breach-of-trust claim.

2) The court rules that Plaintiffs' Reorganization Act claim, which challenges only the Secretary's pre-election review of the proposed amendment, is moot in light of the Secretary's completion of post-election review.

3) Because the allegations of Plaintiffs' complaint challenge only the Secretary's pre-election legal review of the proposed amendment, they must amend their complaint if they wish to challenge the Secretary's post-election review.

ORDER – 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    4)   Plaintiffs' discovery requests either seek information that is not relevant to their remaining claims or they seek information without explaining why the administrative record is inadequate.  The court accordingly grants Defendants' motion for a protective order.  The court does not rule out the possibility that Plaintiffs can demonstrate that they are entitled to discovery.

    5)   The parties must submit a joint status report with specific proposals for bringing this action to a resolution.

### III.  ANALYSIS

Defendants style their dispositive motion as a motion for judgment on the pleadings, motion to dismiss for lack of subject matter jurisdiction, and motion for summary judgment.  To Defendants' attack on Plaintiffs' constitutional claims, the court applies summary judgment standards.  To their attack on Plaintiffs' breach-of-trust claim, the court applies standards applicable to a motion for judgment on the pleadings.  To their attack on Plaintiffs' Reorganization Act claims, the court applies both standards.

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

ORDER – 5

A motion for judgment on the pleadings, which Federal Rule of Civil Procedure 12(c) authorizes, is "functionally equivalent" to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). Rule 12(b)(6) requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from its allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**A.    Plaintiffs Do Not Present Evidence Sufficient to Create a Genuine Issue of Material Fact As to Their Constitutional Claims.**

Plaintiffs' complaint alleges violations of the Fifth and Fifteenth Amendments. Their oppositions to the motions before the court, however, do not mention the Fifteenth Amendment or its guarantee that the "right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude."  Plaintiffs have abandoned their Fifteenth Amendment claim. *See Estate of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011) (holding that a plaintiff abandoned a claim by failing to raise it in opposition to a motion for summary judgment).  In any event, the court is aware of no authority holding

ORDER – 6

that the Fifteenth Amendment applies to Secretarial elections.  Assuming that it does, the Fifteenth Amendment prohibits only intentional discrimination.  *United States v. Blaine County*, 363 F.3d 897, 902 (9th Cir. 2004).  As the court will now discuss, Plaintiffs have offered no evidence of intentional discrimination by any person acting on behalf of the federal government.

Plaintiffs at least mention their Fifth Amendment claim, contending that it invokes the guarantee of equal protection incorporated in its Due Process Clause.  *See United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws.").  As with a Fifteenth Amendment claim, a plaintiff claiming violation of the Fifth Amendment's equal protection guarantee must prove intentional discrimination.  *See*, *e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005).  Plaintiffs allege that members of the election board "intentionally discriminated against themselves and [other Tribe members impacted by the amendment] by conducting an election involving discriminatory election practices, such as [distributing] election information only to non-Filipino voters."  Pltfs.' Opp'n (Dkt. # 41) at 15.  The only *evidence* of these alleged practices, however, is evidence that the Tribe's chairman, Robert Kelly, Jr., sent a "packet of information" about the election only to voters who would not face disenrollment as a result of the amendment.  Doucette Decl. (Dkt. # 16) ¶¶ 4, 6-7, Ex. B.  He also sent a postcard about the election, although there is no evidence that it went only to certain voters.  *Id.* ¶ 5, Ex. C.  Mr. Kelly's conduct could violate the Fifth Amendment only if his actions could be deemed the actions of the federal government.  Plaintiffs insist that because Mr. Kelly was a member of the election board for the Secretarial election, his actions can be attributed to the federal government.

No factfinder could conclude that Mr. Kelly was acting on behalf of the federal election board.  The evidence is muddled as to whether Mr. Kelly was actually a member

of the election board.[2]  Putting that aside, Plaintiffs provide no evidence that Mr. Kelly did anything in his capacity as a member of the election board.[3]  The "packet of information" and postcard in question both come from "Bob Kelly, Jr., Nooksack Tribal Chair," and there is no indication anywhere in the documents that he is purporting to act in his role as a member of the election board.  Doucette Decl. (Dkt. # 16), Exs. B & C.  Those documents are unambiguously campaigning from a tribe member with a plain interest in the outcome of the election.  No one could conclude that Mr. Kelly sent that information in a capacity other than his capacity as the Chair of the Tribe.  He cannot violate the Fifth Amendment while acting in that capacity.

Plaintiffs also insist that the election board as a whole engaged in intentional discrimination by sending out an election packet that allowed only ten days for voters to register.  Pltfs.' Opp'n (Dkt. # 41) at 15.  The same packet went to all eligible voters, but Plaintiffs contend that the short timetable for registration favored voters living in the United States over those living in Canada, and that residents of Canada were disproportionately members of the Nooksack 306.  Again, the evidence does not support Plaintiffs' claim.  First, nothing contradicts evidence that the election board mailed its "Notice of Secretarial Election," which included voter registration forms, on April 25, 2013, or a day later.  That Notice informed voters that their "registration forms must be received by the Secretarial Election Board . . . by 4:30 p.m. on May 10, 2013."  That the

---

[2] In a June 12, 2013 email, election board member Consuelo Johnston responded to a request about the composition of the election board by asserting that the board consisted of herself, Ms. Joseph, and three members of the Tribe.  Mr. Kelly was not among those members.  AR-A at 492.  The court observes that the board's certification of election results bears the signatures of only five board members, and that Mr. Kelly's signature does not appear to be among them.  AR-A at 2068.  Ms. Johnston filed a declaration in which she asserted that the Tribe appointed Mr. Kelly and three other Tribe members to the board (in a Tribe resolution that is not, so far as the court is aware, part of the record).  Johnston Decl. (Dkt. # 43) ¶ 1.

[3] Ms. Johnston declares that Mr. Kelly "did not participate in any election board meetings or conference calls, nor did he take part in any action taken by the election board in any way."  Johnston Decl. (Dkt. # 43) ¶ 2.  Defendants waited until their reply brief to submit her declaration.  Even if the court were to ignore her declaration, there is no evidence that Mr. Kelly did anything discriminatory as a member of the election board.

ORDER – 8

election board provided only fifteen days for notices to be delivered by mail, for eligible voters to fill out registration forms, and for those forms to be delivered by mail back to the board is unfortunate. But to infer that it is discriminatory, Plaintiffs would have to provide evidence, not bare allegation. Plaintiffs provide no evidence that eligible voters in Canada were disproportionately members of the Nooksack 306. Even if they had, Plaintiffs provide no evidence that the election board was aware of the racial makeup of the Tribe's Canadian residents. No finder of fact could infer an intent to discriminate based on the evidence before the court.

The same conclusion applies to Plaintiffs' other allegation of discrimination on behalf of the election board. Plaintiffs complain that members of the Nooksack 306 requested absentee ballots and that the election board rejected those requests. It is not apparent what an "absentee ballot" is in the context of an all-mail election. Putting that aside, there is no evidence that anyone on the election board favored members of the Tribe who were not members of the Nooksack 306 in denying requests for absentee ballots, much less that they did so intentionally. The administrative record appears to contain the election board's written explanation of every instance in which it denied a voter registration request or other request from a potential voter. Plaintiffs do not discuss that evidence, much less explain how it demonstrates intentional demonstration.

Additionally, in a concern that recurs with respect to other issues in this litigation, Plaintiffs do not explain how they (two members of the Tribe) are entitled to represent in court the interests of other Tribe members who allegedly suffered discrimination. There is no evidence that Plaintiffs themselves were the targets of intentional discrimination. Neither of them are residents of Canada, and neither of them provides evidence that their right to vote was abridged or that the election board targeted them for disproportionate treatment. Plaintiffs did not plead this case as a class action, and they offer no authority

ORDER – 9

1   for the proposition that they are permitted to assert the Fifth or Fifteenth Amendment

2   rights of others.

3         Finally, there is no evidence to support Plaintiffs' remaining allegation of

4   discrimination, which is that Defendants discriminated against Plaintiffs by failing to

5   conduct a legal review of the proposed amendment before the election.  Assuming that

6   Plaintiffs are correct about the failure to conduct a legal review, they offer not a shred of

7   evidence that Defendants abdicated their responsibility to conduct a legal review with the

8   intent to discriminate against anyone.

9   **B.    Plaintiffs Have Not Alleged a Legally Cognizable Breach-of-Trust Claim.**

10         Plaintiffs cite no authority recognizing a breach-of-trust claim arising from the

11  federal government's alleged mismanagement of a Secretarial election.  Instead they cite

12  authority pertaining to the federal government's obligation as trustee of monetary funds

13  created for the benefit of a tribe, *Moose v. United States*, 674 F.2d 1277 (9th Cir. 1982)

14  and a case that literally does not mention the federal government's obligations as a trustee

15  to tribes, *Split Family Support Group v. Moran*, 232 F. Supp. 2d 1133 (D. Mont. 2002).

16         Whatever the precise nature of the "distinctive obligation of trust incumbent upon

17  the Government in its dealings with [Indian tribes]," that obligation "does not impose a

18  duty on the government to take action beyond complying with generally applicable

19  statutes and regulations."  *Gros Ventre Tribe v. United States*, 469 F.3d 801, 810 (9th Cir.

20  2006) (internal citation omitted).  Section 16 of the Indian Reorganization Act, and the

21  regulations implementing it, impose duties on the federal government.  Because the court

22  is aware of no authority so much as suggesting that a breach of those duties gives rise to a

23  cause of action for breach of trust, the court concludes that Plaintiffs have not stated a

24  claim for breach of trust.  The court dismisses that claim.

25

26

27

28  ORDER – 10

**C.      Plaintiffs Have Stated No Reorganization Act Claim to Challenge the Secretary's Post-Election Review of the Amendment, and a Challenge to the Secretary's Pre-Election Review is Moot.**

Among the duties that Section 16 of the Reorganization Act imposes on the Secretary is the duty to review an amendment to a tribal constitution to determine if it is "contrary to applicable laws." That duty arises before a Secretarial election: the statute mandates that the Secretary "review the final draft" of the amendment "to determine if any provision therein is contrary to applicable laws," notify the tribe "in writing, whether and in what manner the Secretary has found the . . . amendments . . . thereto to be contrary to applicable laws," and do so "at least 30 days prior to the calling of the election . . . ." 25 U.S.C. § 476(c)(2)(B), (3). The statute is less lucid as to whether the Secretary has an affirmative duty to conduct the same review after the election, but it mandates that the Secretary give its approval of an election adopting an amendment "within forty-five days after the election unless the Secretary finds that the . . . amendment[] [is] contrary to applicable laws." Although the codified portion of the Reorganization Act does not explain what it means by "applicable laws," the 1988 bill that Congress enacted explains that "applicable laws" are "any treaty, Executive order or Act of Congress or any final decision of the Federal Courts which are applicable to the tribe, and any other laws which are applicable to the tribe pursuant to an Act of Congress or by any final decision of the Federal courts." *Cal. Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1264 (D.C. Cir. 2008) (quoting Act of Nov. 1, 1988, Pub. L. No. 100-581, § 102(1)).

Subsection (d)(2) of Section 16, which is part of a subsection that applies only to the Secretary's post-election review of a proposed amendment, contains a right of action: "Actions to enforce the provisions of this section may be brought in the appropriate Federal district court." 25 U.S.C. § 476(d)(2).

It is that right of action that Plaintiffs invoke in their Reorganization Act claim. Amend. Compl. (Dkt. # 3) ¶¶ 22, 86. But, because Plaintiffs filed their amended

ORDER – 11

complaint before the election, and have not amended it in the nearly two years since the election, the allegations of the complaint mention only the Secretary's alleged failure to conduct the required pre-election review. Defendants' motion explicitly declines to discuss any claim that Plaintiffs might have as to the Secretary's post-election review. Defs.' Mot. (Dkt. # 37) at 11 n.9.

Defendants point to a host of defects in Plaintiffs' challenge to the Secretary's failure to conduct a pre-election review of the amendment. They contend that Plaintiffs lack Article III standing to bring the claim. They contend that Plaintiffs lack statutory standing to bring the claim. They contend that any failure to conduct a pre-election review of the amendment is moot in light of the Secretary's post-election determination that the amendment is not contrary to applicable laws. AR-A at 545. Finally, they contend that even if the court could reach the "merits" of Plaintiffs' Reorganization Act claim, it could only conclude that the amendment complied with all applicable laws.

The court begins its analysis by focusing on Plaintiffs' failure to amend their complaint to assert any Reorganization Act claim based on the Secretary's post-election review of the amendment. That is meaningful because it is apparent from the plain language of the statute that the only pre-election review that the Secretary is authorized to perform is to determine whether the text of the proposed amendment complies with all applicable laws. 25 U.S.C. § 476(c)(2) (directing Secretary to "review the final draft" of a proposed amendment "to determine if any provision therein is contrary to applicable laws"). As the court observed when it denied Plaintiffs' injunction motion, post-election review is potentially broader. Jun. 19, 2013 ord. (Dkt. # 25) at 7. For example, regulations implementing the Reorganization Act permit eligible voters excluded from registration rolls to file pre-election challenges, but they also make the decisions of the election board on those challenges unreviewable in advance of the election. 25 C.F.R. § 81.13. But at least one court has held that the Reorganization Act permits challenges to

ORDER – 12

those decisions during post-election review.  *Shakopee Mdewakanton Sioux Cmty. v. Babbitt*, 107 F.3d 667, 671 (8th Cir. 1997).  Much of Plaintiffs' complaint and their opposition to Defendants' motion is dedicated to various procedural violations that Defendants allegedly committed in the run-up to the election.  Plaintiffs cannot remedy those violations via a Reorganization Act claim targeting only the Secretary's pre-election review.  (They might remedy them via the APA, but Plaintiffs' APA claim is not at issue in the motions before the court.)

Because pre-election review is available only to determine whether the text of a proposed amendment complies with applicable laws, it is plausible that Congress did not intend the right of action it created in 25 U.S.C. § 476(d)(2) to apply to pre-election review.  Although the statute mandates that the Secretary conduct pre-election review, it does not obligate the Secretary to announce the results of that review unless it determines that the amendment violates applicable laws.  Only in that case is the Secretary obligated to "notify the tribe, in writing . . . ."  25 U.S.C. § 476(c)(3).  Defendants contend, plausibly enough, that Congress intended pre-election review to serve solely as a means to advise the tribe of legal defects in proposed amendments so that *the tribe* can decide whether to remedy those defects or proceed with the election.  Nothing in the statute explicitly authorizes the Secretary to refuse to hold an election if a proposed amendment is contrary to applicable laws.  The Secretary's sole means of stopping an amendment that is contrary to applicable laws from being incorporated into a tribal constitution is to refuse to approve the results of a Secretarial election after the election is finished.

But even if Congress intended to permit a plaintiff to invoke the Reorganization Act in a suit challenging the Secretary's pre-election review of an amendment, that challenge becomes moot when the Secretary approves or disapproves the election results. At that time, the only relevant determination as to whether an amendment does (or does not) comply with applicable laws is the Secretary's post-election determination.  A claim

ORDER – 13

1    that the Secretary violated the law by not conducting pre-election review is also moot at

2    that time.  At that time, the Secretary has either approved the amendment after the

3    election, thereby certifying it to be in compliance with applicable laws and demonstrating

4    that any pre-election review would not have impacted the election, or it has disapproved

5    the election, in which case the Tribe (or anyone else with standing to invoke the

6    Reorganization Act) has suffered no harm from the failure to conduct pre-election

7    review.

8         Plaintiffs' challenge to the Secretary's pre-election review is moot.  It therefore

9    presents no controversy for the court to resolve, and is thus beyond the court's subject

10   matter jurisdiction, which extends only to "cases" and "controversies" within the scope of

11   Article III of the Constitution.  *See*, *e.g.*, *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726

12   (2013) (noting that a case becomes moot, and thus beyond the scope of Article III, "when

13   the issues presented are no longer 'live' or the parties lack a legally cognizable interest in

14   the outcome").  Because the Secretary completed post-election review since Plaintiffs

15   sued, Plaintiffs no longer have a legally cognizable interest in the outcome of their

16   challenge to the Secretary's pre-election review (assuming they ever had one).  *See id.*

17   (noting that a case or controversy must persist throughout the suit, not merely at the time

18   plaintiff filed the complaint).  Because the only Reorganization Act claim Plaintiffs

19   pleaded targets the Secretary's pre-election review, the court lacks jurisdiction over the

20   claim.

21        The court suggests no opinion on whether Plaintiffs may state a viable

22   Reorganization Act claim by stating allegations about the Secretary's post-election

23   review of the amendment or other violations of the Reorganization Act and the

24   regulations implementing it.  If Plaintiffs wish to do so, however, they must promptly file

25   a motion to amend in compliance with this order.

26

27

28   ORDER – 14

The court's disposition of Plaintiffs' Reorganization Act claim makes it unnecessary for the court to reach Defendants' other attacks on subject matter jurisdiction or their challenges to Plaintiffs' statutory standing. Defendants ask the court to rule that 25 U.S.C. § 476(d)(2) creates a right of action that only a tribe can invoke. The court need not reach that issue in light of its disposition today. The court also declines to address the merits of Plaintiffs' Reorganization Act claim. The court observes, however, that when it denied Plaintiffs' motion for an injunction, it ruled that Plaintiffs had "not identified an 'applicable law' with which the [then-]proposed constitutional amendment is out of compliance . . . ." Jun. 19, 2013 ord. (Dkt. # 25) at 11. Almost two years later, Plaintiffs have yet to do so. When Plaintiffs consider amending their complaint, they must also consider 28 U.S.C. § 1927, which permits a court to award "excess costs, expenses, and attorneys' fees" where an attorney "multiplies the proceedings in any case unreasonably and vexatiously . . . ." If Plaintiffs put Defendants and the court through the exercise of another dispositive motion pointing out the same apparent defects in their Reorganization Act claim without meaningfully addressing those defects, the court will consider a § 1927 award.

**D.      The Court Grants Defendants' Motion for a Protective Order.**

As the court has noted, Plaintiffs' interrogatories and RFPs are concerned solely with Defendants' review of the proposed amendment. Those discovery requests do not specify whether they are concerned with post-election review or pre-election review. Any request regarding pre-election review is irrelevant, because a claim regarding pre-election review is moot. As to post-election review, Plaintiffs do not explain why the August 2013 memo from BIA Regional Director Akin, which is part of the administrative record (AR-A at 540-46), is inadequate.

Plaintiffs scarcely mention the administrative record in their opposition to Defendants' motion for a protective order. They fall well short of convincing the court

that the record is inadequate to prove their claims.  The only claims remaining in the wake of this order are Plaintiffs' FOIA claim, to which their pending discovery is irrelevant, and their APA claim, for which review on the administrative record is presumptively adequate.  Without some explanation of why the court should allow Plaintiffs to venture beyond the scope of the administrative record to prove their APA claim, the court will not permit them to conduct discovery.  The court does not conclude that Plaintiffs are barred from pursuing discovery.  Indeed, Defendants themselves seem to have acknowledged some inadequacies in their administrative record by filing a declaration from an election board member.  *See supra* n.2, n.3.  The court merely rules that it will not permit Plaintiffs to pursue discovery where they have failed to explain its necessity in light of the administrative record.

## IV.   CASE MANAGEMENT ORDER

To ensure that the parties begin to bring this case to a resolution, the court orders as follows:

1) No later than June 10, 2015, the parties shall meet and confer to discuss the following topics:

   a. whether Plaintiffs wish to amend their complaint and, if so, whether Defendants will stipulate to the amendment;

   b. what proceedings are necessary to bring Plaintiffs' FOIA and APA claims to a conclusion;

   c. what proceedings are necessary to bring to a conclusion any other claim Plaintiffs intend to assert in an amended complaint.

The parties shall also discuss the court's proposed resolution, which is that Plaintiffs promptly bring a dispositive motion to resolve their FOIA claim, and that all remaining claims be the subject of a motion for summary judgment from Defendants.  Rather than continuing the parties' abstract debate over the

ORDER – 16

need for discovery beyond the administrative record, the court suggests that Plaintiffs point out what discovery (if any) is necessary in opposition to that motion, consistent with Federal Rule of Civil Procedure 56(d).

2) The parties shall file a joint status report no later than June 18, 2015. It shall state their positions as to an amended complaint, including, if appropriate, deadlines for filing an amended complaint or a motion to amend. It shall state their positions as to what other proceedings are necessary and shall state deadlines for those proceedings.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' partial summary judgment motion. Dkt. # 37. The court also GRANTS their motion for protective order (Dkt. # 38), but does so without prejudice to the possibility that Plaintiffs are entitled to some discovery.

Dated this 20th day of May, 2015.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 17